**KENTUCKY RIVER COAL CORP. et al.,**
**Appellants,**

**v.**

**Sam JONES et al., Appellees.**

Court of Appeals of Kentucky.

Feb. 7, 1969.

Rehearing Denied June 27, 1969.

Bruce Stephens, Jr., J. W. Craft, Jr., M. P. Barret, Hazard, for appellants.

D. G. Boleyn, Tolbert Combs, Hazard, for appellees.

PALMORE, Judge.

By a deed dated May 28, 1903, Malan (or Mahlon) Jones and wife, Dicy Jones, conveyed to The Tennis Coal Company (hereinafter Tennis) the coal and other minerals in and under a tract of land in Perry County, Kentucky, described as containing 597 acres. The appellants are coal companies holding rights under or through Tennis. Two of them brought this suit against the appellee Sam Jones to enjoin him from interfering with their right to mine coal on a portion or portions of the property described in the 1903 deed, and the others became parties through subsequent pleadings. By responsive pleadings Sam Jones asserted that he owns the mineral rights (excepting oil and gas) to a 15-acre tract and a 35-acre tract lying within the boundary of the property described in the 1903 deed and demanding damages for the removal of coal under the 35-acre portion. The coal companies appeal from a judgment to the effect that Sam Jones owns the rights in question and that the appellants are liable for the coal that has been mined and removed by them.

The case was tried on depositions with the burden of proof assigned to Jones. His indicia of title consisted of two patents issued to him by the Commonwealth in 1905. From the facts developed in evidence we are of the opinion that he failed to prove his present ownership of the title he claims to have obtained from those patents.

Sam Jones is one of the children of Malan and Dicy Jones and was a young man 20 or 21 years of age still living at home with his parents in 1903 when the conveyance was made to Tennis. The immediate source of title in Malan Jones was an 1897 deed from Granville Combs and wife calling for 800 acres. When Malan Jones dealt with Tennis for the sale of the mineral rights conveyed in 1903 a survey was made on the ground, but because the contract price was on an acreage basis ($2 per acre) and Malan Jones was not satisfied with the acreage established by the first survey a second survey was made by another surveyor, Will

Ward, who is now deceased. In making the survey Ward was assisted by both Malan Jones and Sam Jones. According to Sam's testimony both he and Ward were employed for that purpose by Tennis. During the making of this survey Ward discovered, and Sam Jones learned from Ward, that within the perimeter of the property claimed by Malan Jones under his deed from Granville Combs, and also within the boundary to be covered by the deed to Tennis, were certain areas that had never been patented, including the 15 acres and the 35 acres mentioned above. Nevertheless, the deed from Malan Jones and wife to Tennis incorporated the description made by Ward from his survey, and the unpatented areas were not excepted. The conveyance was made with general warranty of title and with an express covenant that the grantors, "their heirs, representatives and assigns will make, or procure any further necessary assurance of title to the said land."

Having discovered the defects in his father's title, Sam Jones had Ward make up survey descriptions of the "vacant and unappropriated" areas lying within the boundary described in the deed from his father and mother to Tennis and, in 1905, had the two patents issued to himself.

The first time a controversy arose about the patents was in 1936 when a suit was brought to partition the Malan Jones land among his widow and children. In that suit Sam Jones set up his patents and sought to have the areas covered by them excluded from the partition, but was unsuccessful, the judgment providing as follows:

"It is ordered that the two patented boundaries set out and described in the answer of Sam Jones * * * be included in the division of the landed estate of Mahlon Jones deceased, and to this the defendant, Sam Jones, agrees."

According to Sam's testimony the two patented areas were included within portions laid off to a brother and sister of Sam,

though Sam also received his share elsewhere.

The record of the 1936 partition proceeding does not contain copies of the deeds of division or describe the portions allotted to the various parties.[1] However, neither the pleadings nor the judgment makes any mention of or reference to the 1903 mineral conveyance, and there is no evidence that the deeds of division made any exception of the mineral rights. If not, whatever claim Sam Jones may have had in the mineral rights certainly suffered the same fate as did his claim to the surface, in that the judgment and subsequent division passed his entire right, title, claim and interest to the party or parties to whom the portions in question were allotted. Thus he could not now, as against any adversary, prove his own title when it is shown that it was allotted and conveyed to other parties in the division suit. This is not, of course, a matter of res adjudicata, as argued by the appellant companies, but the failure of a claimant to prove his title. We do not reach the question of res adjudicata or collateral estoppel.

Recapitulating, our analysis of the case is this: Malan Jones gave Tennis a general warranty deed to the mineral rights in the entire boundary, including the 35 acres and 15 acres later patented by Sam Jones. Upon Malan's death Sam occupied two positions, one as a claimant of the 35 acres and 15 acres in his own right and the other as an heir at law of his father. In the partition suit his individual claim under the patents was put into litigation and the heirs took the position that his father owned all of the property at his death. Judgment went in their favor, which, as against Sam, perfected Malan's title to the 35 acres and 15 acres by extinguishing

Sam's claim. Under the doctrine of after-acquired title this acquisition of title by the heirs inured to the benefit of Tennis, their ancestor's grantee under a general warranty deed. Cf. 23 Am.Jur.2d 328 (Deeds, § 295).

In short, Malan's heirs would be estopped by their father's deed. "Estoppel by deed has been well defined as the estoppel or bar which precludes a party from denying the truth of his deed * * *. It precludes a party to the deed *and also those in privity with him* from asserting against the other party thereto and his privies any right or title in derogation of the deed or from denying the truth of any material fact asserted in it." (Emphasis ours.) American Law of Property, § 15.18 (Vol. III, p. 841).

In his pleadings Sam made certain of the other Malan Jones heirs (or their successors) third party defendants, but did not pray any specific relief against them. In his testimony he took the position that they would not contest his claim to the coal rights. Nonetheless, it would make no difference, because whatever title to the mineral rights they received in the partition suit passed at once to their father's grantee and its successors in interest. "It is said that the title vests by operation of law, or by inurement, as soon as it is acquired by the grantor,[2] without the need of judicial assistance." Id., § 15.21 (Vol. III, p. 847).

We find it unnecessary to consider whether Sam's procurement of the patents under the circumstances existing in 1905 was champertous.

The judgment is reversed for further proceedings consistent with this opinion.

All concur.

---

1. The Commissioners' Report seems to be missing, and the Order Book is not a part of the record before us.

2. Or his heirs, of course, claiming through him. (Footnote ours.)